IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

RAINER T. ROSE,                               *

    Appellant,                          *

      v.                               *          Civil Action No. RDB-13-3592
                                                         Bankr. No. 12-25471-RAG
SEAN T. LOGAN,                                *

    APPELLEE.                           *

\*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*

## MEMORANDUM OPINION

In this case, Appellant Rainer T. Rose ("Appellant Rose" or "Appellant") appeals

various orders of the United States Bankruptcy Court for the District of Maryland pertaining

to the sale of real property owned by the Debtor, Blackwater Enterprises, Inc. Specifically,

Appellant Rose, as a shareholder of the Debtor, appeals (1) the Bankruptcy Court's August

12, 2013 Amended Order Granting Trustee's Motion to Sell Debtor's Real Property Free

and Clear of Liens, Claims, Encumbrances and Interests (ECF No. 4-30);[1] and (2) the

Bankruptcy Court's October 29, 2013 Order Denying Motion to Reconsider and Motion for

Rule 2004 Examination (ECF No. 4-55). In this Court, Appellant argues that the Trustee

failed to obtain an appraisal of the property and misrepresented a realtor's opinion of value

as an appraisal in various documents, and that these facts warrant reversal of the Bankruptcy

Court's orders.

This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 158(a)(1), which

extends jurisdiction to the United States District Courts to hear appeals from the final

---

[1] All citations are to the docket numbers of this Court's Electronic Case Filing system unless otherwise noted.

judgments, orders, and decrees of the United States Bankruptcy Courts. The parties'

submissions have been reviewed, and this Court held a hearing on the appeal on March 13,

2014. For the reasons that follow, the Bankruptcy Court's Amended Order Granting

Trustee's Motion to Sell Debtor's Real Property (ECF No. 4-30) and Order Denying Motion

to Reconsider and Motion for Rule 2004 Examination (ECF No. 4-55) are AFFIRMED.

Accordingly, Appellant's appeal is DENIED.

BACKGROUND

## I.     Scope of the Appellate Record and Appellant Rose's Request to Strike Portions of Trustee's Appellate Brief

In his Reply brief, Appellant Rose requests that this Court strike significant portions

of the Trustee's brief for failure to include citations to the record.[2] This Court has neither

cited to nor relied upon any of the challenged passages from the Trustee's brief in this

Memorandum Opinion. Therefore, to the extent Appellant challenges reliance upon the

Trustee's brief, Appellant's request is moot.

However, at the March 13 hearing, counsel for Appellant Rose made clear that the

Appellant objects to specific factual assertions. Specifically, Appellant takes issue with

paragraphs 1, 2, 3, 4, 5, 6, 7, 9, 10, and 11, which primarily address the marketing of the

Property, because the facts contained therein are neither tied to nor supported in the record

in Appellant's view. After a thorough review of the record, this Court finds ample support

for the challenged facts. Moreover, the Transcript of the August 2, 2013 Hearing on the

---

[2] Appellant did not formally move to strike any portion of the Trustee's brief; instead, he simply asserted in his reply brief that certain passages "should be stricken." *See* Appellant's Reply 4-5, ECF No. 12.

Motion to Sell bears out many of these same facts. While Appellant failed to include that transcript in his designation, this Court notes that the hearing transcript contains relevant information regarding the evidence before the Bankruptcy Court in deciding the Motion to Sell. As such, the transcript—and any information contained therein—will not be stricken. *See In re Lloyd E. Mitchell, Inc.*, Bankr. No. 06-13250-NVA, Adversary No. 07-0230, 2007 WL 2011734, at *3 (Bankr. D. Md. July 6, 2007) (denying motion to limit appellate record to record from adversary proceeding alone because materials from debtor's bankruptcy proceeding were necessary to give the appellate court the "full spectrum of the applicable facts" considered by the Bankruptcy Court); *In re General Development Corp. (Sipes v. General Development Corp.)*, 177 B.R. 1000, 1006-07 (S.D. Fla. 1995) (refusing to strike materials from bankruptcy appellate record where those materials were before the bankruptcy judge). Specifically, because the record of the proceedings below contains support for the following statements, this Court refuses to strike the passages identified by the Appellant.[3]

## II.    Factual Background

This case arises out of Appellant Rainer T. Rose's ("Appellant Rose") opposition to the sale of 9843 Wades Point Road, Claiborne, Maryland ('the Property"), which is the sole asset of the Debtor Blackwater Enterprises, Inc. (the "Debtor"). Mem. Op. Supp. Order Denying Rose's Mot. Stay Pending Appeal 2 (hereinafter, "Mem. Op. Mot. Stay"), ECF No. 5-6. The Debtor filed a voluntary petition for bankruptcy on August 23, 2012 under

---

[3] Appellant additionally identifies paragraphs 12, 13, 14, 18, 19, 20, and 21 as "bald assertions of law" and asserts those paragraphs should be stricken as well. Appellant did not address these paragraphs during the March 13 hearing before this Court, and his Reply brief offers a scant two sentences in support of his position. As this Court finds these objections to be exceedingly vague, the request with respect to these paragraphs is denied.

Chapter 11 of the United States Bankruptcy Code. *See* Voluntary Pet., ECF No. 2. After the case sat inactive for several months, the United States Trustee filed a motion to convert or dismiss on January 8, 2013. Mem. Op. Mot. Stay 3. On March 4, 2013, the Bankruptcy Court granted the motion, converted the case to a Chapter 7 proceeding, and designated Sean Logan ("the Trustee") as the Trustee for the estate. *See id.* at 4. The Debtor filed a motion to reconsider the conversion of the case, which the Bankruptcy Court denied. *See* Order, ECF No. 4-16; *see also* Mem. Op. Mot. Stay 4-6. Meanwhile, the Trustee began to market the property and filed a motion to employ Barry Waterman, a real estate agent with Coldwell Banker Waterman Realty, in order to market the property on March 15, 2013.

On May 22, 2013, the Trustee filed his Motion to Sell Debtor's Real Property Free and Clear of Liens, Claims, Encumbrances and Interests (ECF No. 4-18) and attached a contract with a proposed sale price of $1.42 million. The contract was dated April 25, 2013—i.e., forty-one (41) days after the Trustee was appointed and two days after the Bankruptcy Court approved the Trustee's Motion to Employ Real Estate Agent.

The Trustee's Motion to Sell and accompanying Notice of Sale (ECF No. 4-19) contained a number of disclosures. The Motion stated that the Debtor had valued the Property at $2.9 million in his bankruptcy filings, but that Barry Waterman of Coldwell Banker Waterman Realty had conducted an "appraisal" of the Property and had set "the value and listing price of the Property" at $1.499 million. *See* Trustee's Mot. Sell ¶¶ 7, 13, ECF No. 4-18. Similarly, the Trustee's Notice of Sale stated that the Debtor had valued the property at $2.9 million, but that Barry Waterman of Coldwell Banker Waterman Realty had conducted an "in-depth appraisal" valuing the property at $1.499 million. *See* Notice

Trustee's Mot. Sell 2, ECF No. 4-19.  Both the Motion and the Notice indicated that the

$1.42 million offer was the highest offer received to date and disclosed the $71,000 sales

commission to be paid to Barry Waterman and Coldwell Banker Waterman Realty.  *See*

Trustee's Mot. Sell ¶¶ 15-16; Notice Trustee's Mot. Sell 1-2.

 The Debtor opposed the Motion to Sell, arguing that the property had been

appraised for $2.9 million in July of 2012.  Debtor's Opp. ¶ 2, ECF No. 23.  In addition, the

Debtor filed a Motion to Dismiss and a Motion for Authority to Incur Secured Debt

("Motion to Finance") in an attempt to repurchase the Property.

 The Bankruptcy Court held a hearing on the Motion to Sell on August 2, 2013.  At

the hearing, the Debtor withdrew both its Motion to Dismiss and Motion to Finance as the

proposed financing had fallen through.  Mot. Sell Hr'g Tr. 4:13-19 Aug. 2, 2013, ECF No. 14

Ex. A (hereinafter, "Aug. 2 Hr'g Tr.").  Nevertheless, both the Debtor and Appellant Rose

expressed a preference for auctioning the Property.  *Id.* at 4:20-5:10.  The Trustee, however,

recommended against an auction and explained his marketing efforts to the Bankruptcy

Court as follows:

> I've had this property on the market since March. We've had
> reasonable traffic both visiting the property and requesting
> information on it.  We've had a couple of bids.  I listed the
> property at 1.49. The highest bid that I had is the current one at
> 1.42.
>  My agents have gone back to the next highest bid and
> tried to generate additional interest and they're not willing to go
> above, I think it's 1.275 was their offer.
>  I continue to advertise it.  It's on a number of electronic
> medias [sic].  We've had an advertisement come out in a couple
> of newspapers as well as magazines.  The last one last month
> generated some interest but not a higher offer.  I don't even
> have an offer yet at 1.49.

*Id.* at 5:15-6:4; *see also* Mem. Opp. Mot. Stay 7 ("The Trustee indicated that he had listed the real estate at $1.49 million, had diligently marketed it, and had received a fair volume of traffic and interest. He also indicated that the contract on the table—for a price of $1.42 million—reflected the highest bid received and that the next highest bidder was unwilling to go higher."). Several creditors—including Severn Savings Bank, FSB ("Severn Bank"), which has intervened in this appeal—appeared at the hearing and voiced support for the sale. *See* Aug. 2 Hr'g Tr. 6:15-7:14.

On August 26, 2013, Appellant Rose filed a Motion to Reconsider Sale (ECF No. 4-31), asserting that the Trustee's marketing efforts were deficient and that the notice of the Motion to Sell misrepresented Mr. Waterman's valuation of the property as an appraisal. In addition, Appellant Rose filed Motions for Rule 2004 Examinations of the Trustee and Barry Waterman.

The Bankruptcy Court held a hearing on the motions on October 22, 2013. The Bankruptcy Court rejected the Motion for Reconsideration as an attempt to relitigate issues addressed at the prior hearing, noting that the Appellant's arguments "weren't raised at the last hearing." Mot. Reconsider Hr'g Tr. 4:14-16 Oct 22, 2013, ECF No. 4-75 (hereinafter "Oct. 22 Hr'g Tr."). Moreover, the Bankruptcy Judge stated:

> There is no evidence that the property could be sold for more [than $1.42 million.] . . . [T]here was a bona fide purchaser out there ready, willing and able to step up and purchase it for more than what the trustee's contract was, and that's what we were left with.

*Id.* at 12:5-9. Accordingly, the Bankruptcy Court denied the Motion for Reconsideration and the Motions for Rule 2004 Examinations.

Appellant Rose filed a timely appeal of the Bankruptcy Court's rulings. Appellant

Rose filed a Motion for Stay Pending Appeal (ECF No. 4-59) in the Bankruptcy Court,

which was denied on December 17, 2013. This appeal raises the following issues:

> **Issue 1a.** The Bankrtupcy Court erred when it granted the Trustee's Motion to Sell Real Property Free and Clear Of Liens and when it denied the Motion to Reconsider its Order Granting such Motion to Sell where the Chapter 7 Trustee, in efforts to have his Motion granted, either fraudulently or mistakenly characterized a value of the Debtor's Real Property as an appraised value, when it was not the appraised value and failed to demonstrate the sale price of the Debtor's Real Property in such a way on which the Bankruptcy Court could have reasonably depended in order to exercise its duty to inquire of Trustee's proposed sale? [sic]

> **Issue 1b.** Did the Bankruptcy Court [e]rr when it granted Trustee's Motion to Sell Real Property Free and Clear Of Liens and when it denied the Motion to Reconsider its Order Granting such Motion to Sell where the Chapter 7 Trustee failed to demonstrate that the Sale Price of the Debtor's Real Property was the highest and best price that the Chapter 7 Trustee could have achieved such that the sale proceeds inured to the best interest of the bankruptcy estate and its unsecured creditors?

> **Issue 2.** Did the Bankruptcy Court [e]rr when it granted Trustee's Motion to Sell Real Property Free and Clear Of Liens, and when it denied the Motion to Reconsider Order Granting Motion to Sell Debtor's Real Property, where the Chapter 7 Trustee failed to adhere to the absolute notice requirements of the Federal and Local Rules of Bankruptcy Procedure?

> **Issue 3.** Did the Bankruptcy Court err when it denied the Motions for Rule 2004 Examinations of Sean Logan (Chapter 7 Trustee), and Barry Waterman (Chapter 7 Trustee's real property evaluator), where the Appellant submitted a colorable and cogent challenge to whether Chapter 7 Trustee obtained the highest and best price for Debtor's Real Property, as his duty?

Appellant's Brief 5-6, ECF No. 3.

After conducting a teleconference with the parties, this Court stayed the action

pending a hearing scheduled for March 13, 2014.  In addition, this Court granted Severn

Bank's Motion to Intervene in Appellate Proceedings (ECF No. 9) and permitted Severn

Bank to file its own brief.  *See* Order, ECF No. 13.

STANDARD OF REVIEW

This appeal is brought pursuant to Rule 8001 of the Federal Rules of Bankruptcy

Procedure. On appeal from the Bankruptcy Court, this Court acts as an appellate court and

reviews the Bankruptcy Court's findings of fact for clear error and conclusions of law *de novo*.

*In re Merry–Go–Round Enterprises, Inc.*, 400 F.3d 219, 224 (4th Cir. 2005); *In re Kielisch*, 258 F.3d

315, 319 (4th Cir. 2001). A factual finding is clearly erroneous "when although there is

evidence to support it, the reviewing court on the entire evidence is left with a firm and

definite conviction that a mistake has been committed." *United States v. U.S. Gypsum Co.*, 333

U.S. 364, 395 (1948).

An abuse of discretion standard applies in the review of the Bankruptcy Court's

ultimate application of law to fact.  The abuse of discretion standard applies to both of the

Bankruptcy Court's rulings on appeal in this matter.  *Accord BAC Home Loans Servicing LP v.

Grassi*, Nos. EP 11-010, 08-21085-JBH, 2011 WL 6096509, at *4 (1st Cir. BAP Nov. 21,

2011) (unpublished) ("Bankruptcy court orders to sell property free and clear are reviewed

for abuse of discretion.  Usually, the denial of a motion to reconsider also is reviewed for

abuse of discretion." (citations omitted)).  "An abuse of discretion exists where the [lower

court's] decision rests upon a clearly erroneous finding of fact, an errant conclusion of law,

or an improper application of law to fact." *In re Marvel Entertainment Group, Inc.*, 140 F.3d 463,

470 (3d Cir. 1998) (quoting *ACLU v. Black Horse Pike Reg'l Bd. of Educ.*, 84 F.3d 1471, 1476 (3d Cir. 1996)) (internal quotation omitted). "At its immovable core, the abuse of discretion standard requires a reviewing court to show enough deference to a primary decision-maker's judgment that the court does not reverse merely because it would have come to a different result in the first instance." *Evans v. Eaton Corp. Long Term Disability Plan*, 514 F.3d 315, 322 (4th Cir. 2008) (citation omitted).

The district court may affirm, modify, or reverse a bankruptcy judge's order, or remand with instructions for further proceedings. *See* FED. R. BANKR. P. 8013; *see also In re White*, 128 F. App'x. 994, 999 (4th Cir. 2005); *Suntrust Bank v. Johnson*, 2006 U.S. Dist. LEXIS 87622, at *6, 2006 WL 3498411 (D. Md. Dec. 4, 2006).

<u>ANALYSIS</u>

## I.     The Appellant's Standing to Bring This Appeal

Intervenor Severn Savings Bank, FSB ("Severn Bank") argues that Appellant Rose, as a shareholder in the Debtor, has no standing to bring this appeal. Under the "well-established" test for standing in bankruptcy appeals, "the appellant must be a person aggrieved by the bankruptcy order"—i.e., the appellant must be "directly and adversely affected pecuniarily." *In re Vu*, 366 B.R. 511, 514 (D. Md. 2007); *see also In re San Juan Hotel*, 809 F.2d 151, 154 (1st Cir. 1987) (stating that a litigant is an aggrieved person under this standard where "the order diminishes his property, increases his burdens, or impairs his rights"). For example, creditors have the requisite "direct pecuniary interest in a bankruptcy court's order transferring assets of the estate." *Id.* (quoting *Duckor Spradling & Metzger v.*

*Baum Trust (In re P.R.T.C., Inc.)*, 177 F.3d 774, 778 (9th Cir. 1999)).[4]  The purpose of this standing requirement is "to insure that bankruptcy proceedings are not unreasonably delayed by protracted litigation that does not serve the interests of either the bankrupt's estate or its creditors."  *In re El San Juan Hotel*, 809 F.2d 151, 154 (1st Cir. 1987).

Citing to cases from several different jurisdictions, Severn Bank asserts that a shareholder lacks standing to appeal an order of the bankruptcy court affecting a corporate debtor in which the shareholder owns stock.  *See* Intervenor's Br. ¶¶ 5-7 (discussing *In re Central Ice Cream Co.*, 62 B.R. 357, 360 (N.D. Ill. 1986); *In re Dein Host, Inc.*, 835 F.2d 402 (1st Cir. 1987); *In re AFY*, 734 F.3d 810 (8th Cir. 2013)).  Appellant Rose contends, however, that those cases are distinguishable because Rose is the sole shareholder of the Debtor and because the purpose of bankruptcy estate sales is to obtain the highest and best price for the estate's creditors *and equity holders*.  *See* Appellant's Reply 4, ECF No. 15 (citing *In re Reading Broadcasting, Inc.*, 386 B.R. 562, 575 (Bankr. E.D. Pa.  2008)).  In addition, at the March 13 hearing, Appellant Rose asserted that he had standing because the Debtor corporation was forfeited as the time of filing, causing Appellant Rose to stand in the shoes of the corporate Debtor.

After reviewing the parties' authorities, it is clear that the majority of courts facing the issue have found that shareholders—even of closely held corporations—lack standing to pursue appeals of orders of the bankruptcy courts.  *See, e.g., In re Dein Host, Inc. (Pignato v. Dein Host, Inc.)*, 835 F. 2d 402, 405-06 (1st Cir. 1987) (holding that 50% shareholder did not

---

[4] Some other individuals, such as unsuccessful bidders, however, generally do not have standing.  *In re Moran*, 566 F.3d 676, 681 (6th Cir. 2009).

have standing where standing was premised on "shrinkage" of his stock in appeal of bankruptcy court's order and noting that "even a *sole* shareholder acquires no personal cause of action because of an injury—real or threatened—to the corporation"); *In re AFY (Sears v. U.S. Trustee)*, 734 F.3d 810, 820 (8th Cir. 2013) ("The shareholder standing rule, which applies to even a sole shareholder, recognizes that corporations are entities separate from their shareholders . . . .").[5]  Moreover, these cases are consistent with the decision of the United States Court of Appeals for the Fourth Circuit in *Kreisler v. Goldberg*, 478 F.3d 209 (4th Cir. 2007), which addressed shareholder standing issues in the automatic stay context.  In *Kreisler*, a closely-held limited liability company (the "debtor-LLC") and its shareholders voluntarily filed for bankruptcy under Chapter 11.  Subsequently, Goldberg filed an action for ejectment in Maryland state court against a wholly-owned subsidiary (the "subsidiary") of the debtor-LLC.  *Id.* at 212.  The bankruptcy court refused to enforce the automatic stay against the Maryland action.  *Id.*  Applying the "fundamental precept of corporate law that each corporation is a separate legal entity," the Fourth Circuit concluded that the real-party-in-interest in the Maryland suit was the subsidiary and not the debtor-LLC.  *Id.* at 213.  Moreover, the court rejected the debtor-LLC's argument that the property of the subsidiary was part of the bankruptcy estate, reasoning that "[t]he fact that a parent corporation has an

---

[5] The various authorities cited by the Appellant are inapplicable to this case.  *See* Appellant's Reply 4-5 (citing *In re Reading Broadcasting, Inc.*, 386 B.R. 562 (Bankr. E.D. Pa. 2008), and *Whelan v. Abell*, 953 F.2d 663 (D.C. Cir. 1992)).  While *In re Reading Broadcasting, Inc.* addresses the purpose of a sale of bankruptcy estate property, it did not address the issue of shareholder standing.  Similarly, *Whelan v. Abell* addressed whether the plaintiffs were a real-party-in-interest in a tort suit (rather than standing to bring a bankruptcy appeal).  Finally, at the hearing, Appellant made reference to *Franchise Tax Board v. Alcan Aluminium Ltd.*, 493 U.S. 331 (1990); while that case briefly outlined the shareholder standing doctrine, the Court made no decision with respect to the applicability of the doctrine in that case.

ownership interest in a subsidiary . . . does not give the parent any direct interest in the *assets* of the subsidiary." *Id.* at 214. Finally, the Fourth Circuit rejected the argument that the automatic stay should have applied to the Maryland action based on the mere fact that the Maryland action would cause the debtor-LLC's interest in the subsidiary to lose value; the court noted that the loss of value was not dispositive, and that the "nature and extent" of the debtor-LLC's interest in the subsidiary "remain[ed] unchanged." *Id.* at 214. Thus, *Kreisler* stands for the proposition that corporate formalities are not to be ignored and that a decrease in the *value* of a shareholder's stock does not create a direct interest in the assets of a corporate body. *See id.* at 214 ("[The debtor-LLC] created [the subsidiary] LLC for the purpose of holding title to the property. Having assumed whatever benefits flowed from that decision, it cannot now ignore the existence of the [subsidiary] LLC in order to escape its disadvantages.")

These principles are similarly applicable in this case where Appellant Rose is a shareholder of the Debtor, a closely-held corporation.[6] Rose contends that the proposed sale approved by the Bankruptcy Court will harm him because it will only pay out "Appellant's equity claim of $1,000,000.00 at approximately 15%." Appellant's Br. 10, ECF No. 3. The property, however, was owned by the Debtor Blackwater Enterprises, Inc., and Rose has not asserted any other ownership interest in the Property other than his ownership

---

[6] It appears that there is some ambiguity regarding the exact extent of Appellant Rose's interest. In a separate filing in Appellant Rose's individual bankruptcy case (which is not now before this Court), Appellant Rose apparently represented that he was a 50% shareholder in the Debtor. In this case, however, Appellant Rose contends that he is 100% owner of the Debtor, *see* Mem. Op. Mot. Stay 3 n.1, ECF No. 8-3, and counsel for Appellant attested to that fact at the March 13, 2013 hearing before this Court. The Bankruptcy Court appears to have accepted Rose's claims to 100% ownership of the Debtor. *See id.* at 3.

interest in the Debtor itself. In accordance with the weight of authority, this interest in the stock of the Debtor—even as the sole shareholder—is insufficient to confer standing to Appellant Rose.[7] However, in light of the fact that the Fourth Circuit has not definitively applied the shareholder standing doctrine to bankruptcy appeal cases, this Court will address the merits of Appellant's appeal as well, particularly in light of the fact that these issues were briefed and argued at the March 13 hearing.

## II. The Appellant's Arguments with Respect to the Need for an Appraisal and Alleged Failure to Demonstrate that the Sale Price Was the Highest and Best Price

Appellant asserts that the Bankruptcy Court erred by ignoring the challenge to the value of the Property and "rubber-stamp[ing] the Trustee's efforts." *Id.* at 16. In addition, the Appellant argues that the Bankruptcy Court failed to make a proper inquiry into the value of the Property, the Trustee's marketing efforts, or the length of time the Property was on the market. *Id.* at 20. Even if Appellant Rose had standing to pursue this action, he has failed to demonstrate that the Bankruptcy Court abused its discretion in either respect.

---

[7] Appellant Rose has asserted various other fall-back arguments at different stages in this proceeding in an attempt to establish standing. These arguments have no merit and do not warrant discussion at any great length. For example, at various stages of this proceeding, Appellant Rose has characterized himself as a "creditor" to the estate; similarly, at the March 13 hearing, Appellant's counsel asserted that Appellant had filed a proof of claim and that no objection had been filed. However, Appellant has never provided any justification for his claim against the estate other than his 100% ownership rights in the Debtor corporation—i.e., as a shareholder. Moreover, Appellant never pressed this claim in the Bankruptcy Court

Appellant Rose also asserts that he has standing because the Debtor had forfeited its corporate status at the time of the filing of the bankruptcy proceeding and, therefore, Appellant stood in the corporation's shoes. This argument is unavailing because, at the current time, the Debtor's corporate charter has been revived (which, as it became clear at the hearing, was for the specific purpose of carrying on this bankruptcy case). Moreover, both the original bankruptcy petition and the Opposition to the Motion to Sell were both filed in the Debtor's name.

## A. Motion to Sell

Under § 363 of the Bankruptcy Code, a bankruptcy trustee may use, sell, or lease property of the bankrupt estate after notice and hearing. *See* 11 U.S.C. § 363(b). Bankruptcy courts have "wide latitude in approve a sale of assets under § 363(b)." *In re Siskind*, No. 02-65786-NVA, 2008 WL 2705528, at *6 (Bankr. D. Md. July 3, 2008); *see also In re Merry-Go-Round Enters.*, 180 F.3d 149, 162 (4th Cir. 1999) ("The purpose of a Chapter 7 case is to administer efficiently the liquidation of the estate for the benefit of the creditors. To accomplish this often seemingly impossible task, the Chapter 7 trustee requires considerable discretion. . . . [S]o long as the trustee acts reasonably and in the best interests of the estate, and so long as she obtains fair value for the property under the circumstances of the case, her choice of method of disposition will be respected." (internal citations and quotation marks omitted)). "The factors the Court must find for approval of a sale are: (i) a sound business reason justifying the sale, (ii) adequate and reasonable notice of the sale to all parties, (iii) that the sale has been proposed in good faith and (iv) that the purchase price is fair and reasonable." *In re Siskind*, 2008 WL 2705528, at *6; *see also In re Fischer*, No. 03-13704, 2010 WL 2746329, at *10 (Bankr. D. Md. July 9, 2010) ("In determining whether to approve a proposed sale under section 363, courts generally apply standards that, although stated variously ways, represent essentially a business judgment test. Some courts have described the standard as one of "good faith" or of whether the transaction is 'fair and equitable.' Others question whether the sale is 'in the best interest of the estate.' In the context of sales of substantially all of the assets of the estate, some courts have required that

the price to be paid be 'fair and reasonable.'" (quoting 3 *Collier on Bankruptcy* ¶ 363.02[1][f] (15th rev. ed. 2005)).

Appellant Rose first contends that the Bankruptcy Court erred in relying upon the Trustee's representations regarding the existence of an appraisal. Specifically, Appellant attempts to rely upon *In re Donoway*, 139 B.R. 156 (Bankr. D. Md. 1992), to establish that the Trustee failed to provide proper evidence of the value of the Property in the form of a certified appraisal.[8] This Court, however, does not find that *In re Donoway* establishes an absolute requirement for a certified appraisal. Indeed, there is no progeny of cases following *Donoway* establishing such a requirement. Notably, the two cases that have directly addressed this aspect of the *Donoway* decision have rejected it. *See In re Smith*, 267 B.R. 568 (S.D. Ohio 2001) (rejecting *Donoway* and permitting real estate broker to testify as expert with respect to property's fair market value); *In re Pichardo*, 2013 WL 1352308 (D.R.I. 2013) (finding that a real estate broker is qualified to provide opinion of value and rejecting cases—and expressly citing to *Donoway*—that categorically reject broker's opinion of value while at the same time recognizing that realtor's opinion is not of the same weight). Accordingly, the fact that the Trustee failed to obtain a certified appraisal assessing the value of the Property does not, standing alone, necessitate a reversal of the Bankruptcy Court's order.

---

[8] Specifically, Appellant relies upon the following passage from *In re Donoway*:

> As the owner of real estate, the debtor is entitled to render his opinion as to the fair market value of the property. With that one exception, only the testimony of a qualified expert, such as an experienced appraiser, would be admissible on the issue. Real estate brokers and agents without specialized training in real estate appraising are not qualified to testify as to their opinions regarding fair market value.

139 B.R. at 158.

Appellant next argues that the Bankruptcy Court erred in approving the sale in the face of his challenge to the value of the Property because the Trustee failed to adequately demonstrate that the contract price was the highest and best price possible.[9] In particular, Appellant Rose argues that the length of time that the Property was marketed (41 days) raises questions about the sale price, and he further asserts that the Bankruptcy Court's inquiry into the Trustee's marketing efforts and decision making process were deficient. *See* Appellant's Br. 19-20, ECF No. 3. Appellant has failed to provide any relevant, controlling legal authority to support this argument. In particular, he has not cited any case law to support his contention that the time that the Property was marketed was unreasonable or that any particular length of time for marketing purposes is required.

Moreover, Appellant's arguments ignore the proceedings during the August 2, 2013 Motion to Sell hearing before the Bankruptcy Court. At that time, the Bankruptcy Court had before it an executed contract. The Trustee described his marketing efforts (both before and after the contract was signed) on the record, and neither the Debtor nor Appellant Rose objected to that description.[10] *See* Aug 2 Hr'g Tr. 5:15-6:4. As the Trustee

---

[9] Specifically, the Appellant asserts:

> The first attack on Trustee's Motion to Sell came upon the Opposition to the Motion to Sell filed by Debtor (Doc. #63). Therein, the Debtor pled an appraisal in hand valuing the property at $2.9 million, more than two times the proposed sale price. (Doc. #63, Opposition to Trustee's Motion to Sell, ¶2).

Appellant's Br. 16.

[10] In fact, Appellant Rose appears to adopt those facts in his Brief. *See* Appellant's Br. 19, ECF No. 3 ("The Trustee admitted that he was receiving an average of one offer every few weeks and that he had a lot of interest. Further, despite the Trustee having significant experience in selling realty, he knows, or should have know [sic] that an offer at the full listing price after merely 41 days of marketing suggests that the listing price was simply too low, breaching his duty to maximize the benefits to the unsecured creditors and equity

explained, there were several offers on the Property, of which the current contract was the highest. *See id.* at 55:18-24. The Trustee's efforts to stimulate additional, higher bids were unsuccessful. *See id.* at 5:21-24. Under these circumstances, with only Appellant's year-old appraisal for $2.9 million as a counter-weighing consideration, it was not an abuse of discretion for the Bankruptcy Judge to conclude that the contract price was fair and that the Trustee had exercised sound business judgment.

## B. Motion for Reconsideration

Similarly, the Bankruptcy Court did not abuse its discretion in denying Appellant's Motion for Reconsideration.[11] In particular, Appellant contends that the Bankruptcy Court erred once it became clear that the Trustee did not have a certified appraisal. *See* Appellant's Br. 15, ECF No. 3.

Under Rule 59(e), a judgment may be amended under Rule 59(e) in only three circumstances: (1) to accommodate an intervening change in controlling law; (2) to account for new evidence not available at trial; or (3) to correct a clear error of law or prevent manifest injustice. *See, e.g., Gagliano v. Reliance Standard Life Ins. Co.*, 547 F.3d 230, 241 n.8 (4th Cir. 2008). Such motions do not authorize a "game of hopscotch," in which parties switch

---

holders."). Ignoring Appellant's mischaracterization of the contract price as a "full listing price" offer, this Court notes that it is, in fact, the interest of other buyers that Appellant relies upon to argue that the Trustee should have held out longer for a better offer.

[11] Appellant Rose identifies Rule 9024 of the Federal Rules of Bankruptcy Procedure and Rule 60 of the Federal Rules of Civil Procedure as the legal authority undergirding his Motion. However, because Appellant's Motion was filed within fourteen (14) days of the Bankruptcy Court's order, this Court construes Appellant's Motion as a motion under Rule 59(e). *See* FED. R. BANKR. P. 9023 (incorporating Rule 59 of the Federal Rules of Civil Procedure, but limiting the time to file to 14 days); *cf. BAC Home Loans Servicing LP v. Grassi*, Nos. EP 11-010, 08-21085-JBH, 2011 WL 6096509, at *6 (1st Cir BAP Nov. 21, 2011) (construing motion for reconsideration filed within 14 days of the bankruptcy court's order as a motion under Rules 59(e) and 9023).

from one legal theory to another "like a bee in search of honey." *Cochran v. Quest Software, Inc.*, 328 F.3d 1, 11 (1st Cir. 2003). In other words, a Rule 59(e) motion "may not be used to relitigate old matters, or to raise arguments or present evidence that could have been raised prior to entry of judgment." *Pac. Ins. Co. v. Am. Nat'l Fire Ins. Co.*, 148 F.3d 396, 403 (4th Cir. 1998) (quoting 11 Wright, *et al.*, *Federal Practice and Procedure* § 2810.1, at 127-28 (2d ed. 1995)). Where a party presents newly discovered evidence in support of its Rule 59(e) motion, it "must produce a legitimate justification for not presenting the evidence during the earlier proceeding." *Id.* (internal citations and quotation marks omitted). "In general, reconsideration of a judgment after its entry is an extraordinary remedy which should be used sparingly." *Id.* (internal citations and quotation marks omitted).

In this case, Appellant Rose invokes the final prong—that the Bankruptcy Court's order raised a clear error of law and a manifest injustice. *See* Appellant's Reply 9. As there was no legal requirement mandating that the Trustee obtain an appraisal of the Property, there was no need for the Bankruptcy Court to reconsider its order as a clear error of law. Nor did the Appellant establish grounds for reconsideration under a misrepresentation or manifest injustice theory because the there was no indication that any interested individual was misled by the Trustee's statements with regard to the "appraisal."[12]

---

[12] Appellant Rose has failed to establish a basis for reconsideration under either of the other two prongs as well. Appellant has identified no change in controlling law, and the additional evidence that Appellant attempted to offer as to the appraised or market value of the Property was available to the Appellant at the time of the hearing on the Motion to Sell. Thus, it is not "new evidence" for purposes of a motion for reconsideration.

## III.    Appellant's Arguments with Respect to Deficient Notice

Appellant Rose also argues that the notice of the sale was deficient under the local Bankruptcy Rules[13] and, therefore, the Bankruptcy Court abused its discretion in granting the Motion to Sell and denying the Motion for Reconsideration.  Specifically, Appellant's Brief (ECF No. 3) suggests that Local Rule 6004 requires that a bankruptcy trustee support his or her motion to sell real property with an appraisal.  *See* Appellant's Br. 22.  At the March 13 hearing, Appellant's counsel retreated from this position, arguing that notice was deficient simply because the Trustee had "misrepresented" the fact that he had obtained an appraisal.  Appellant argues that this allegedly deficient notice may have stifled objections to the sale from "an unknown objector."  Appellant's Br. 22.

Local Bankruptcy Rule 6004-1(a) states the requirements for a notice of sale of property in the District of Maryland:

> **Sale Notices**. Notices of private sale of estate property must include the following:
> (1) if an appraisal has been performed,
>> (A) the appraised value of the asset being sold;
>> (B) the date of the appraisal; and
>> (C) the name and address of the appraiser;
> (2) if no appraisal has been performed, the scheduled value of the asset being sold;
> (3) the purchaser's identity;
> (4) a full description of any relationship between the purchaser and any party in interest;

---

[13] Notice of a sale is required under the Bankruptcy Act.  *See* 11 U.S.C. § 363(b)(1) (stating trustee may sell property of estate "after notice and a hearing"); *see also* FED. R. BANKR. PRO 6004 (procedures for sale of property).  Under Rule 2002 of the Federal Rules of Bankruptcy Procedure, the notice should "include the time and place of any public sale, the terms and conditions of any private sale and the time fixed for filing objections."  Local Rule 6004-1 provides additional requirements for the content of the notice, which are outlined herein.  *See* Local Rule 6004-1 (Bankr. D. Md. 2013).

> (5) a statement of all consideration paid and to be paid by the purchaser and the payment terms;
>
> (6) a statement of the deadline for the filing of any opposition. The deadline date shall be no less than twenty-one (21) days after service of the motion, plus any additional time required by Federal Bankruptcy Rules 9006(a) and (f). The Court Hearing Scheduler (CHS) Program on the court's website and CM/ECF filing screen for this type of motion will compute the date that an objection is due;
>
> (7) a date selected from the court's website for a hearing if a timely objection is filed; and
>
> (8) a statement that the property may be sold without further notice if a timely objection is not filed.

Local Rule 6004-1(a) (Bankr. D. Md. 2013). The Local Bankruptcy Rules do not otherwise provide for a definition of the term "appraisal."

In this case, the Trustee's Notice was adequate. Indeed, Appellant has not—and cannot—object to the Notice on the grounds that he or any other interested person was denied notice of the sale.[14] Moreover, the only dissatisfied party in this case is Appellant himself,[15] and Appellant was clearly aware of Motion to Sell as he participated in the hearing. *See* Aug. 2 Hr'g Tr. 5:3-10.

While the Trustee's Notice (ECF No. 4-19) states the Trustee had obtained "an in-depth appraisal," the Notice also clearly identified that Barry Waterman of Coldwell Banker Waterman Realty had performed the "appraisal." *See* Notice 2. Moreover, the Verified Statement of Barry Waterman (ECF No. 4-12) clearly identifies Mr. Waterman as "a real estate agent" and provides his address. V.S. Barry Waterman ¶ 2, ECF No. 12. Accordingly,

---

[14] Based upon Appellant Rose's argument in his papers and at the March 13 hearing, it is clear that his challenge is a rule-based challenge. Nowhere has he provided any argument that the notice constitutes a due process violation under *Mathews v. Eldridge*, 424 U.S. 319 (1976), and the circumstances of this case certainly do not give rise to such a claim.

[15] Under the Trustee's proposed sale, all creditors are paid in full. Moreover, all participating creditors at the hearing on the Motion to Sell voiced support for the sale. *See* Aug. 2 Hr'g Tr. 6:15-7:14.

notice was adequate to serve the purposes of the Local Rule, which (as Appellant points out) is to allow creditors and other parties to vet the appraiser and assess the evaluation contained in the appraisal.

Not only did both Appellant and Debtor have notice of the Trustee's plan to sell the Property, but they also disputed whether the Trustee had obtained a fair price. *See* Debtor's Opp. ¶ 2 (stating that the Property had been "appraised in July of 2012 . . . for the sum of $2.9 million); Mot. Recon. ¶¶ 1, 13, 14 (stating Trustee did not have an appraisal, reiterating the July 2012 appraisal, and disclosing a new opinion of value on the Property valuing the property at $2.3 million to $2.5 million). Any argument that Appellant was deprived of an opportunity to object to the sale price based upon lack of proper notice is rebutted by the clear record in this case. Moreover, there is no reason why Appellant could not have raised his objection to the "appraisal" reference in the Notice at the original August 2 hearing because there was adequate information in the record at that time for Appellant to make that argument. In light of these facts, it was not error for the Bankruptcy Court to grant the Motion to Sell or to deny the Motion for Reconsideration.

## IV.    Order Denying Motion for Rule 2004 Examinations

As the Bankruptcy Court's decisions on the Motion to Sell and Motion for Reconsideration did not constitute an abuse of discretion, there was no reason for the Bankruptcy Court to grant the Appellant's Motion for Rule 2004 Examinations.

<u>CONCLUSION</u>

For the reasons stated above, the Bankruptcy Court's Amended Order Granting Trustee's Motion to Sell Debtor's Real Property Free and Clear of Liens, Claims, Encumbrances and Interests (ECF No. 4-30) and Order Denying Motion to Reconsider and Motion for Rule 2004 Examination (ECF No. 4-55) are AFFIRMED. Accordingly, Appellant's appeal is DENIED.

A separate Order follows.

Dated:          March 25, 2014               _____/s/_____

                                             Richard D. Bennett
                                             United States District Judge